*Municipal Court of the City of Boston*

No. 164141

**TAYLAN REALTY CO., INC.**

v.

**THE STUDENT BOOK EXCHANGE, INC.**

Argued: Dec. 8, 1967 Decided: Jan. 3, 1968

*Present:* Adlow, C. J., Morrissey, Foster, J. J.

Case tried to *Canavan, J.* in the Municipal Court of the City of Boston. No. 164141

*Adlow, C. J.* Action of contract to recover damages for breach of an agreement to execute a lease. The agreement was executed in January, 1966. The writ is dated October 17, 1966.

In January, 1966 the parties entered into the following agreement:

"Received from Student Book Exchange, Inc. $750 rent for the month of January, 1966 for the premises 305 Huntington Ave. Boston and check for $2000 to be held in escrow by Taylan Realty for the full performance of conditions of a Lease to be executed between Taylan Realty and Student Book Exchange Inc. of the above premises.

"The said lease to restrict use of premises to sale of book supplies and related

items. To be for 5 years from January 1, 1966 at a rental of $750 per month, plus 30% of any increase of taxes over 1965 taxes per year and $100 quarterly for water. The lease to provide for subordination of lease to first mortgage. Not to be assigned of sublet without lessor's consent and usual agreements.

"Said lease to be guaranteed by Donald H. Anderson.

Witness Ernest C. Johnson

"(s) Samuel Taylor
*Taylan Realty Co., Inc.*
Student Book Exchange, Inc.
Donald H. Anderson, President
16 Peter Road
North Reading, Mass."

At the time of entering into this arrangement the Student Book Exchange, hereinafter referred to as lessee, was already in occupation of the premises. During the month of February the attorneys for Taylan Realty Co., Inc., hereinafter referred to as lessor, prepared a formal lease which was never signed by either of the parties. The lessee paid the rent in accordance with the written instrument prepared in January during the months of January, February, and March. In the latter part of March, 1966 the lessee vacated the premises. An employee of the lessee delivered the keys to Taylor, President of the lessor corporation. By a lease dated April 1, 1966 the

lessor leased the premises abandoned by the lessee to Kramer Book Co., Inc., for a term of 5 years on terms less favorable to the lessor than those afforded by the lessee's agreement of January, 1966. In this action the lessor seeks to recover for the damage resulting from the lessee's breach of its agreement.

In a companion case the lessee sought to recover from the lessor the sum of $2,000, which under the terms of the January agreement was "to be held in escrow by Taylan Realty Co., Inc. for the full performance of the conditions of the lease. In this case the court found that "The $2,000 held in escrow was solely for conditions after a lease was executed," and found for the lessee in the amount of $2,000.

In the principal action the court found for the lessor in the amount of $2,850, and being aggrieved by the rulings and finding of the court, the lessee brings this report.

 Keeping in mind that the obligation to pay rent under the terms of a lease can only be terminated by a surrender and acceptance of the leasehold, *Carleton Chambers Co.* v. *Trask*, 261 Mass. 264, 267, the lessee urges that there was such a surrender and acceptance. The burden of showing this surrender and acceptance is on the lessee. *Leavitt* v. *Maykell*, 210 Mass. 55; *Taylor* v. *Kennedy*, 228 Mass. 390, and acceptance to be effective must be unconditional. *Talbot* v. *Whipple*, 14 Allen 177,

180; *Deane* v. *Caldwell*, 127 Mass. 242, 248; *Johnson* v. *Stone*, 215 Mass. 219.

█ Whether there has been a surrender and acceptance is usually a question of fact as revealed by the statements and actions of the parties. *Bandera* v. *Donahue*, 326 Mass. 563.

█ In the absence of any such consensual arrangement to be relieved of the obligation to pay the rent reserved in a lease, there must be conduct by the landlord inconsistent with the preservation of the lessee's interest in the leasehold. *Amory* v. *Kanoffsky*, 117 Mass. 351, 354; *Walker* v. *Kendall*, 299 Mass. 591, 595.

█ Guided by these considerations, let us reconsider the facts concerning the lessee's abandonment of the premises. All that the report says about this phase of the transaction is as follows:

> "During the latter part of March, 1966, Student Book vacated the premises. An employee of Student Book delivered the keys to Taylor. Taylor testified that the premises were left in a neat and orderly condition.

> "Subsequently Taylor leased the premises to Kramer Book Co., Inc. This lease was for a term of five years starting on April 1, 1966. . .".

It is impossible to conjure up a situation involving surrender and acceptance more favorable to the lessee. The unqualified acceptance of the key by the president of the

lessor corporation was coupled with the immediate occupation of the premises by a new lessee. Nothing in the record indicates any protest by the lessor or even suggestion that in finding a new tenant it was acting in the lessee's interest. Unless it can be said that under no circumstances can a finding be required as a matter of law of a surrender by operation of law, then we believe that such circumstances exist in this case. The court erred in refusing to rule as requested by the lessee that there was a surrender and acceptance of the leasehold in issue.

The lessee requested the court to rule in effect that the evidence did not warrant a finding for the plaintiff (Defendant's request #7). In refusing to so rule the court erred. Regardless of whether or not there was a surrender and acceptance of the premises or a mere abandonment without more, in most jurisdictions the right of the lessor to look to his lessee for damages is governed by the provisions of the lease which creates the term. The rule is that in the absence of a covenant in the lease to make up any loss of rent that might follow a termination of the lease, the lessor has no further claim against the lessee. *Sutton* v. *Goodman,* 194 Mass. 389, 395, 16 Ruling Case Law 1137. The agreement made by the parties in January, 1966 contained no such covenant.

Informal though it was, it was sufficient

to constitute a valid and binding lease. *Dutton* v. *Gerrish*, 9 Cush. 89, 93. *Kabley* v. *Worc. Gas. & Light Co.*, 102 Mass. 392, 394. *Greaney* v. *McCormick*, 273 Mass. 250, 253. The fact that the agreement provided that it should be put into more formal terms does not deprive this instrument of the quality of a valid and enforceable lease. *Bacon* v. *Bowdoin*, 22 Pick. 401, 405. *Nigro* v. *Conti*, 319 Mass. 480, 482. *Crossley* v. *Maycock*, (1894), LR 18, Eq. 180. There are no covenants in this instrument permitting a claim for loss of rents as were contained in the leases in issue in *Providence Building Co.* v. *Atlantic National Bank*, 228 Fed. 814. *Gardner* v. *Parsons*, 224 Mass. 347. *Merchants Nat. Bank of Ryerson*, 251 Mass. 314. *Hermitage Co.* v. *Levine*, 248 New York 333.

██ The provision in the agreement executed by the parties which provides for "usual agreements" is often used in preliminary arrangements, there is little authority to confer upon it any more than commonplace significance. In *Hampshire* v. *Wickens*, L. R. (Eng.) 1878, 7 Ch. 555, it was stated that the "usual lessee's covenants" are (1) to pay rent, (2) to pay taxes except landlord's taxes, (3) to keep and deliver up the premises in repair, (4) to allow the lessor to enter and view the state of repair, and (5) to permit a re-entry in default of payment of rent.

These provisions are simple and have a

clear-cut and definite meaning. In contrast to these, covenants to permit claims for damages in the event of abandonment or breach vary in context. Many provide alternative remedies. See *Gardner* v. *Parsons,* 224 Mass. 347. Such covenants are not usual in any sense of the term and cannot be read into the agreement. It follows that having resumed control of the abandoned premises and having installed a new tenant under a new lease the landlord had no rights under the original agreement to proceed against the lessee for damages.

We believe that these considerations are conclusive of the landlord's rights. However, it is not inapporpriate to make this further observation. Under the decisions in this Commonwealth, even if the lessor has not accepted a surrender, and even if there were a covenant in the lease permitting a claim for damages resulting from the breach, such recovery cannot be had until the term is ended. Recovery cannot be had in instalments. The writ dated October 17, 1966 was prematurely brought. *Woodbury* v. *Sparrell Print,* [187 Mass. 426, 431. *Zevitas* v. *Adams,* 276 Mass. 307, 317. *Providence Building Co.* v. *Atlantic National Bank,* 228 Fed. 814. *The Hermitage Co.* v. *Levine,* 248 NY 333.

. It was error for the court to refuse to rule that the evidence did not warrant a finding for the lessor.

Finding for the plaintiff vacated. Finding to be entered for the defendant.

ERNEST C. JOHNSON,

of Boston for the Plaintiff.

DAVID H. MORSE,

of Boston for the Defendant.